ORDERED.

Dated: May 13, 2015

_____
Michael G. Williamson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 8:12-bk-16792-MGW |
| | Chapter 13 |
| Lisa Michelle Metzler, | |
|     Debtor. | |
| _____/ | |
| In re: | Case No. 8:13-bk-09736-MGW |
| | Chapter 7 |
| Nootan Patel, | |
|     Debtor. | |
| _____/ | |

**MEMORANDUM OPINION ON SURRENDER**

These two bankruptcy cases—one a chapter 7 and the other a chapter 13—present a relatively novel question: how does a debtor surrender real property in bankruptcy? In the chapter 7 case, the debtor failed to schedule real property that was subject to a state court foreclosure action or file a statement of intentions under Bankruptcy Code § 521 indicating whether she intended to retain or surrender the property. In the chapter 13 case, the debtor filed a plan that proposed to surrender her homestead, which was also subject to a foreclosure action, under Bankruptcy Code § 1325. But in both cases, the debtors actively defended the state court foreclosure actions after they either received a discharge or surrendered their property. This

Court must decide whether actively opposing a state court foreclosure action is inconsistent with "surrendering" property.

At a minimum, "surrender" under Bankruptcy Code §§ 521 and 1325 means a debtor cannot take an overt act that impedes a secured creditor from foreclosing its interest in secured property. Although "surrender" is not defined in the Bankruptcy Code, the First and Fourth Circuits have interpreted that term to mean a debtor must relinquish any rights in the secured property—including the right of possession—and make it available to the secured creditor. Because those definitions accord with the dictionary definition of "surrender" and public policy, this Court agrees with the First and Fourth Circuits. By actively opposing the state court foreclosure actions, the debtors in these cases failed to "surrender" their property.

**Background**

The facts in *In re Metzler* are straightforward: Before Lisa Metzler filed for chapter 13 bankruptcy, Wells Fargo sued in state court to foreclose its mortgage on her homestead. Debtors typically file chapter 13 bankruptcy to save their home. And in fact, that is what Metzler initially attempted to do. Her original chapter 13 plan provided for adequate protection payments and cure of $35,000 in prepetition arrearages.[1] Metzler, however, amended her plan three times.[2] Metzler's third amended chapter 13 plan, which the Court confirmed,[3] indicated that she intended to surrender her homestead.[4]

After the Court confirmed Metzler's third amended plan, Wells Fargo went back to state court to conclude its foreclosure action. But Metzler actively defended Wells Fargo's efforts to

---

[1] Metzler Doc. No. 2.

[2] Metzler Doc. Nos. 6, 7 & 30.

[3] Metzler Doc. No. 33.

[4] Metzler Doc. No. 30.

foreclose is mortgage. So Wells Fargo moved this Court for an order revoking its confirmation order.[5] Metzler explained her continued efforts to defend the foreclosure action even after she "surrendered" her property by claiming "surrender" merely means "to make the collateral available to the creditor *by dissolving the automatic stay*."[6]

The facts in *In re Patel* are more complicated: Nearly ten years ago, Nootan Patel bought property located at 5105 West Grace Street, Tampa, Florida, with a loan from Wells Fargo Bank, N.A.[7] Patel gave Wells Fargo a first mortgage on her property to secure her obligations on the loan. Patel eventually defaulted on the loan, and Wells Fargo sued to foreclose its mortgage.[8] Five years after Wells Fargo sued to foreclose its mortgage, Patel filed for chapter 7 bankruptcy.[9] But when she filed for bankruptcy, the Debtor failed to list the West Grace Street property on her schedules because she did not realize she still owned it.[10]

Apparently, Patel had originally taken title to the West Grace Street property in her name and her daughter's name as joint tenants with a right of survivorship.[11] At some point after Wells Fargo sued to foreclose its mortgage, Patel's daughter (Shree Patel) quitclaimed her interest in the property to Patel's ex-husband, which meant Patel actually owned the property with her ex-husband as tenants in common as of the petition date.[12] But it appears Patel believed her ex-

---

[5] Metzler Doc. No. 41.

[6] Metzler Doc. No. 46 (emphasis added).

[7] Patel Doc. No. 46-1.

[8] Patel Doc. No. 46 at ¶ 4.

[9] Patel Doc. No. 1.

[10] Patel Doc. No. 1 at Schedule A.

[11] Patel Doc. No. 46-2.

[12] Patel Doc. No. 46-4; Patel Doc. No. 49 at 6.

husband owned the house after the daughter quitclaimed her interest to him, so Patel listed the Wells Fargo debt on Schedule D and made a notation that the property securing that debt—i.e., the West Grace Street property—was the ex-husband's house.[13]

Because she did not believe she owned the West Grace Street property, Patel never filed a statement of intentions indicating whether she intended to reaffirm the mortgage debt, redeem the property, or surrender it.[14] And since the West Grace Street property was not scheduled, it was never administered by the chapter 7 trustee. Eventually, Patel received her chapter 7 discharge, and her bankruptcy case was closed.[15] After Patel received her discharge, U.S. Bank, which took assignment of the mortgage on the West Grace Street property, continued pursuing the foreclosure action originally filed by Wells Fargo.[16]

Unbeknownst to Patel, Mark Stopa (of the Stopa Law Firm) began defending the foreclosure action on behalf of Patel and her daughter.[17] For instance, Stopa filed an answer to the foreclosure complaint and asserted ten different affirmative defenses.[18] Stopa also filed a motion for summary judgment on behalf of Patel and her daughter seeking judgment as a matter of law because (i) U.S. Bank allegedly failed to give Patel and her daughter notice of their default under the mortgage and an opportunity to cure; and (ii) Wells Fargo allegedly failed to give Patel notice it was assigning her mortgage to U.S. Bank.[19] Stopa also filed an affidavit in

---

[13] Patel Doc. No. 1 at Schedule D.

[14] Patel Doc. No. 1.

[15] Patel Doc. No. 41.

[16] Patel Doc. No. 46 at ¶ 10.

[17] Patel Doc. No. 46-6; Patel Doc. No. 49 at 12-13.

[18] Patel Doc. No. 46-6 at 7-12.

[19] *Id.* at 21-22.

support of the summary judgment motion.[20] Contending a debtor must either reaffirm or redeem property he or she seeks to retain, U.S. Bank moved this Court to reopen Patel's bankruptcy case and compel her to surrender the West Grace Street property since she had neither reaffirmed the mortgage debt nor redeemed the property.[21]

## Conclusions of Law

A chapter 7 debtor has three options when it comes to secured property: the debtor can redeem the secured property, reaffirm the debt it secures, or surrender the secured property.[22] Bankruptcy Code § 521—titled "Debtor's duties"—expressly requires a chapter 7 debtor to file a statement of intentions indicating whether he or she intends to redeem secured property or reaffirm the debt it secures:

> [W]ithin thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, . . . [the debtor shall] file with the clerk a statement of his intention with respect to the retention or surrender of such [secured] property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property.[23]

A debtor must then perform his or her stated intention, generally within thirty days after the date first set for the meeting of creditors.[24] The Eleventh Circuit has interpreted § 521 to mean that a debtor cannot retain collateral unless he or she redeems it or reaffirms the debt it secures.[25]

---

[20] Based on Patel's testimony at an April 30, 2015 hearing on U.S. Bank's motion to reopen Patel's bankruptcy case and compel her to surrender the West Grace Street property, the Court finds that Patel (i) had not seen the affidavit Stopa filed in state court until receiving a copy from U.S. Bank's counsel; (ii) had no idea where the facts in it came from; (iii) had not signed the affidavit; and (iv) had not authorized Stopa to file it.

[21] Patel Doc. No. 46.

[22] *In re Plummer*, 513 B.R. 135, 141 (Bankr. M.D. Fla. 2014) (citing *Taylor v. AGE Fed. Credit Union (In re Taylor)*, 3 F.3d 1512 (11th Cir. 1993) and *In re Pratt*, 462 F.3d 14, 19 (1st Cir. 2006)).

[23] 11 U.S.C. § 521(a)(2)(A).

[24] 11 U.S.C. § 521(a)(2)(B).

The Bankruptcy Code imposes similar requirements on a chapter 13 debtor. A chapter 13 debtor is not required to file a statement of intentions. But a chapter 13 debtor is required to file a plan of reorganization indicating how he or she proposes to treat secured property. And Bankruptcy Code § 1325 only gives chapter 13 debtors three options for treating secured debt in a plan: gain the secured creditor's consent to the plan treatment, cram down the plan treatment over the secured creditor's objection, or surrender the secured property.[26] Under the cramdown option, the debtor is required to pay the secured creditor the total present value of the allowed secured claim over the life of the plan.[27] Absent consent from a secured creditor, then, a chapter 13 debtor cannot retain collateral without paying for it.[28]

In fact, neither Metzler nor Patel dispute that they cannot retain the collateral at issue without paying for it. As it turns out, Patel actually does not oppose foreclosure at all. Her lawyer apparently has been opposing the foreclosure action without her authorization. Metzler, however, does oppose foreclosure, but she contends the fact that she "surrendered" her homestead under the confirmed plan does not preclude her from defending Wells Fargo's foreclosure action.

So the issue really is what is "surrender" under the Bankruptcy Code. As Judge Jennemann observed in *In re Plummer*, the term "surrender" is "not defined in § 521(a)(2) or elsewhere in the Bankruptcy Code."[29] In attempting to define the term "surrender," the First Circuit Court of Appeals, in an opinion authored by former bankruptcy judge Conrad Cyr in *In re Pratt* almost nine years ago, observed that Congress purposely chose to use the term

---

[25] *In re Taylor*, 3 F.3d at 1516.

[26] 11 U.S.C. § 1325(a)(5)(A)-(C).

[27] 11 U.S.C. § 1325(a)(5)(B).

[28] 11 U.S.C. § 1325(a)(5)(C).

[29] 513 B.R. 135, 142 (Bankr. M.D. Fla. 2014).

"surrender" rather than "deliver" in § 521(a)(2).[30] Given that word choice, Judge Cyr reasoned that "'surrender' does not necessarily contemplate that the debtor physically have transferred the collateral to the secured creditor."[31] According to Judge Cyr, "surrender" means to make the property "available" to the secured creditor:

> Thus, the most sensible connotation of "surrender" in the present context is that the debtor agreed to make the collateral *available* to the secured creditor—*viz.*, to cede his possessory rights in the collateral—within 30 days of the filing of the notice of intention to surrender possession of the collateral.[32]

Less than a year after the First Circuit construed the term "surrender" in § 521 to mean to "make available," the Fourth Circuit, in *In re White*, construed it in the context of § 1325 in a similar fashion.[33] There, the Fourth Circuit relied on *Collier on Bankruptcy*, which has defined "surrender" in § 1325 "as the 'relinquishment of any rights in the collateral,' including the right to possess the collateral." The Fourth Circuit noted that the *Collier* definition was consistent with numerous other bankruptcy courts that have focused on the "complete relinquishment of rights." According to the Fourth Circuit, the relinquishment of rights is at the heart of "surrender":

> At the most basic level, then, the word "surrender" means the relinquishment of all rights in property, including the possessory right, even if such relinquishment does not always require immediate physical delivery of property to another.[34]

The Court agrees with the First and Fourth Circuits that surrender, at a minimum, requires a debtor to relinquish secured property and make it available to the secured creditor.

---

[30] *In re Pratt*, 462 F.3d 14, 18-19 (1st Cir. 2006).

[31] *Id.* at 18.

[32] *Id.* at 19.

[33] 487 F.3d 199, 205 (4th Cir. 2007).

[34] *Id.*

7

That does not mean, as Judge Jennemann noted in *In re Plummer*, that the debtor must "deliver" the property to the secured creditor.[35] For one, Congress did not require "delivery." For another, requiring the debtor to deliver property to the secured creditor could circumvent state law by allowing the secured creditor to bypass the foreclosure requirement.[36] In this context, this Court concludes that relinquishing property and making it available to the secured creditor—i.e., "surrendering" the property—means not taking an overt act to prevent the secured creditor from foreclosing its interest in the secured property.

Here, both Metzler and Patel plainly took overt acts to prevent Wells Fargo and U.S. Bank from foreclosing their mortgages. Patel filed an answer and affirmative defenses and even sought summary judgment in her favor. Of course, Patel can be forgiven for opposing the foreclosure action considering she apparently did not authorize her state court counsel to do so. Like Patel, Metzler actively defended Wells Fargo's foreclosure action, although unlike Patel, she did so intentionally apparently on the theory that "surrender" means something akin to simply dissolving the automatic stay without abrogating any state law rights the debtor may have.

But simply dissolving the automatic stay cannot be what "surrender" means because it would effectively permit the type of "ride through" that the Eleventh Circuit held was impermissible in *In re Taylor*.[37] The issue in *Taylor* was whether a chapter 7 debtor could retain possession of collateral property by staying current on his or her obligation to the secured creditor, but without reaffirming or redeeming the underlying debt. In bankruptcy parlance, this

---

[35] 513 B.R. 135, 143 (Bankr. M.D. Fla. 2014).

[36] *Id.*

[37] 3 F.3d 1512 (11th Cir. 1993).

is called a "ride through." The Eleventh Circuit held that the plain language of § 521 did not provide for a ride-through option, and besides, permitting a "ride through" would give the debtor a "head start"—not a "fresh start."[38] The Eleventh Circuit also reasoned that if a ride-through option existed, it would render the other alternatives in § 521 "nugatory."[39]

Under Metzler's definition of "surrender," a "ride through" would be permissible. After all, "surrender" is complete, under Metzler's definition, the moment the automatic stay is lifted, and the creditor is permitted to pursue its state court remedies. If that were the case, a debtor could enjoy possession of the collateral indefinitely while hindering and prolonging the state court process. Moreover, like the "ride through" at issue in *Taylor*, Metzler's definition of surrender would also render the other alternatives in § 1325(a)—and § 521—of little value.

## Conclusion

"Surrender" must mean something. In the context of Bankruptcy Code §§ 521 and 1325, the Court concludes the term means that a debtor must relinquish secured property and make it available to the secured creditor by refraining from taking any overt act that impedes a secured creditor's ability to foreclose its interest in secured property. Because Metzler and Patel took affirmative steps to oppose the state court foreclosure actions here, they failed to surrender their property as required under Bankruptcy Code §§ 521 and 1325.[40]

Attorneys Hywel Leonard and Adam Diaz are directed to serve a copy of this order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the order.

---

[38] *Id.* at 1516.

[39] *Id.* at 1515 (quoting *In re Kennedy*, 137 B.R. 302, 304 (Bankr. E.D. Ark. 1992))(internal citations omitted).

[40] The Court has already entered an order on the motion to revoke Metzler's confirmation order (Metzler Doc. No. 52). The Court will enter a separate order granting the motion to compel Patel to surrender the West Grace Street property (Patel Doc. No. 46).

**Hywel Leonard, Esq.**
**Carlton Fields, P.A.**
*Counsel for Wells Fargo Bank N.A.*

**Kenneth R. Case, Esq.**
**Stopa Law Firm**
*Counsel for Lisa Michelle Metzler*

**Adam A. Diaz, Esq.**
**SHD Legal Group, P.A.**
*Counsel for U.S. Bank*

**David R. Singha, Esq.**
**David R. Singha, P.A.**
*Counsel for Nootan Patel*